ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EX. AGTE. RONALD RIOPEDRE FLORES #24153<br><br>RECURRIDO<br><br>V.<br><br>POLICÍA DE PUERTO RICO<br><br>RECURRENTE | KLRA202400321 | *REVISIÓN JUDICIAL* procedente de la Comisión de Investigación, Procesamiento y Apelación<br><br>Núm.: 22P-63 00020<br><br>Sobre: Expulsión |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard, y la Jueza Díaz Rivera.

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de noviembre de 2024.

Comparece el Negociado de la Policía de Puerto Rico (el Negociado, la Policía de Puerto Rico o la parte recurrente) y solicita la revocación de la *Resolución* emitida el 25 de octubre de 2023, por la Comisión de Investigación, Procesamiento y Apelación (la CIPA o la agencia recurrida), notificada el 19 de abril de 2024. Mediante la referida *Resolución,* la CIPA declaró *Ha Lugar* la *Apelación* presentada por el exagente Ronald Riopedre Flores (señor Riopedre Flores o el Recurrido) en el Caso Núm. 22P-63; revocó la *Resolución Final* emitida el 4 de enero de 2022, por el Comisionado del Negociado de la Policía de Puerto Rico, notificada el 7 de febrero de ese año, que impuso al Recurrido la medida disciplinaria de expulsión del Cuerpo de la Policía de Puerto Rico y ordenó el pago de salarios y haberes dejados de percibir durante el término que el señor Riopedre Flores estuvo expulsado, inclusive desde que este fue separado de su puesto el 7 de febrero de 2022, cuando se le entregó personalmente la *Resolución Final.*

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

**I.**

El señor Riopedre Flores trabajaba como Agente del orden público (Placa 24153), adscrito a la División de Vehículos Hurtados del Área de Mayagüez. El 20 de abril de 2021, tras la investigación administrativa de rigor, el Coronel Antonio López Figueroa, Comisionado del Negociado de la Policía de Puerto Rico, (el Comisionado del Negociado de la Policía de Puerto Rico), suscribió una *Resolución de Cargos* en contra del Recurrido, notificada el 27 de mayo de ese año, en la que le advirtió de que se proponía imponerle la sanción de expulsión del puesto que este ocupaba en la Policía de Puerto Rico. Además, le advirtió de su derecho a solicitar vista informal ante un Oficial Examinador.[1] En dicha *Resolución de Cargos* el Comisionado del Negociado de la Policía de Puerto Rico, imputó al Recurrido que el 7 de septiembre de 2020 incurrió en actos constitutivos de infracción a la Ley Núm. 54 de 15 de agosto de 1989 (Ley Núm. 54) conocida *como Ley para la Prevención e Intervención con la Violencia Doméstica,* en contra de la Sra. Vanessa Alicea Méndez (señora Alicea Méndez), y en otras infracciones que constituyen faltas graves según el Artículo 14, Subsección 14.6.1 incisos (18), (29) y (32) del *Reglamento de Personal de la Policía de Puerto Rico,* Reglamento Núm. 4216 de 11 de mayo de 1990, según enmendado. Las infracciones imputadas al Recurrido consistieron en desacatar y desobedecer órdenes legales de un superior o funcionario de la Policía de Puerto Rico con autoridad para ello, incurrir en una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía y violatoria de la Ley Núm. 54. En la *Resolución de Cargos* el Comisionado del Negociado de la Policía de Puerto Rico, imputó al Recurrido la comisión de las siguientes faltas, estatuidas expresamente como *Faltas Graves* en el Artículo 14, Subsección 14.6.1 incisos (18), (29) y (32) Artículo 14.6.1 del Reglamento Núm. 4216 *supra*:

> **(18) Desacatar y desobedecer órdenes legales comunicadas en forma verbal o escrita por cualquier superior o funcionario de la Policía de Puerto Rico con autoridad para ello, o realizar acto de insubordinación o indisciplina.**

---

[1] *Véase* Anejo XXII, páginas 74-76 del Apéndice del *Recurso de Revisión Administrativa.*

**(29)** **Incurrir en una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía.**

…………

**32. Incurrir en actos constitutivos de la Ley Núm. 54 de 15 de agosto 1989, según enmendada, "Ley de Violencia Doméstica". La investigación administrativa no dependerá de los resultados del caso criminal.**

El 4 de enero de 2022, tras la celebración de la vista administrativa, el Comisionado del Negociado de la Policía de Puerto Rico emitió *Resolución Final* en la que impuso al Recurrido la sanción de expulsión del puesto que este ocupaba en la Policía de Puerto Rico.[2] Dicha Resolución *Final* fue notificada personalmente al señor Riopedre Flores el 7 de febrero de 2022.[3] En desacuerdo con la *Resolución Final* que le impuso la sanción de expulsión, el 21 de febrero de 2022, el señor Riopedre Flores presentó *Apelación* ante la CIPA en la que solicitó *juicio de novo*.[4] Allí alegó que no incurrió en actos de violencia doméstica ni en conducta lesiva inmoral o desordenada en detrimento del Cuerpo de la Policía de Puerto Rico y que tampoco desacató ni desobedeció órdenes. De igual forma, el Recurrido arguyó que en el expediente administrativo hay ausencia de prueba clara, robusta y convincente que justificara su expulsión.

El 19 de septiembre de 2023, la CIPA señaló Vista en su Fondo para el 11 de octubre de 2023 y emitió varias órdenes de citación de testigos para su comparecencia a la vista, las cuales fueron dirigidas a los agentes Edwin García Lugo (Placa 20495) y Roger Bermúdez Rodríguez (Placa 25684) del CIC de Mayagüez, al Teniente Pablo R. Pluguez Alvarado 7-21657, del Área de Mayagüez y a la Sra. Vanessa Alicea Méndez.[5]

El 11 de octubre de 2023, la CIPA celebró Vista en su Fondo en la que el Negociado desfiló la siguiente prueba documental la cual fue debidamente identificada y admitida**:** Planilla Informativa suscrita y firmada por el señor Riopedre Flores el 7 de septiembre de 2020, Fotografías tomadas por el Agente Edwin García Lugo de la División de Servicios

---

[2] *Véase* Anejo XXIII, páginas 78-79 del Apéndice del *Recurso de Revisión Administrativa.*
[3] *Véase* página 80 del Apéndice del *Recurso de Revisión Administrativa.*
[4] *Véase* Anejo 1, páginas 1-8 del Apéndice del *Recurso de Revisión Administrativa.*
[5] *Véase* Anejos VIII y IX a las páginas17-21 del Apéndice del *Recurso de Revisión.*

Técnicos de Mayagüez el 7 de septiembre de 2020 a las 5:44 A.M.[6] Además, como **prueba ofrecida y no admitida**, el Negociado presentó como la Identificación I, la Planilla Informativa suscrita y firmada por la señora Alicea Méndez el 7 de septiembre de 2020.[7] La señora Alicea Méndez, no compareció a la Vista en su Fondo a pesar de haber sido debidamente citada y autorizada a que su testimonio fuese mediante videoconferencia.[8]

La prueba oral desfilada por el Negociado consistió de los testimonios del Teniente Pablo R. Pluguez Alvarado 7-21657, y de los agentes Roger Bermúdez Rodríguez (Placa 25684) de la División de Violencia Doméstica de Mayagüez y Edwin García Lugo, (Placa 20495) de la Unidad de Servicios Técnicos de Mayagüez.

En esencia, el **Teniente Pablo R. Pluguez Alvarado (Placa Núm. 7-21657)** declaró que el día de los hechos, tras recibir una llamada al cuartel, acudió al negocio El Divorcio y entrevistó a la señora Alicea Méndez y tomó la información sobre el incidente en el que esta le indicó que había sido golpeada por el señor Riopedre Flores. En síntesis, el testigo declaró que la señora Alicea Méndez le dijo que, tras una discusión, el señor Riopedre Flores la había agarrado por el pelo y la había tirado contra el piso. El Teniente Pablo R. Pluguez Alvarado expresó que al observarla esta estaba temerosa, tenía laceraciones en el hombro, mano y rodilla; que además, percibió un fuerte olor a alcohol y que la dama le dijo que el Recurrido la había agredido en la cara tras preguntarle si ella le había sido infiel.[9] Al ser contrainterrogado, el Teniente Pablo R. Pluguez Alvarado afirmó que aunque la señora Alicea Méndez manifestó que el señor Riopedre Flores le había dado un puño en la cara el testigo al entrevistarla inmediatamente después del alegado incidente no vio ninguna marca en su

---

[6] *Véase* Anejo XV, págs. 35-36 y 36-51 del Apéndice del *Recurso de Revisión Administrativa.*
[7] *Véase* Anejo XVI, páginas 52-57 del Apéndice del *Recurso de Revisión Administrativa*.
[8] *Véase* página 9, Líneas 19-24 de la Transcripción de la Vista Administrativa celebrada el 1 de octubre de 2023 ante la CIPA.
[9] *Véase* **páginas 20-21** de la Transcripción de la Vista Administrativa celebrada el 1 de octubre de 2023 ante la CIPA.

rostro; que sus heridas en la rodilla eran compatibles con una caída; que la señora Alicea Méndez emitía un fuerte olor a alcohol y que tanto ella como el Recurrido estaban en estado de embriaguez.[10]

Por su parte, el **Agente Roger Bermúdez Rodríguez (Placa 25684)** de la División de Violencia Doméstica de Mayagüez, declaró en la Vista en su Fondo ante la CIPA que entrevistó primero al **Teniente Pablo R. Pluguez Alvarado (Placa Núm. 7-21657)** por ser el que inició la investigación preliminar; que al entrevistar a la señora Alicea Méndez ésta plasmó en la Planilla Informativa su versión de los hechos y que luego de hacerle las advertencias de rigor, entrevistó al señor Riopedre Flores. Sobre el incidente, el testigo declaró que la señora Alicea Méndez le narró que fue a la residencia del Recurrido y que allí surgió una discusión; que ambos regresaron a la residencia del Sr. Milton Nazario donde habían compartido anteriormente; que al llegar al lugar el señor Riopedre Flores la haló del vehículo, la tiró contra la gravilla y que, durante el trayecto, mientras el Recurrido iba manejando, este le había dado un puño en el pómulo derecho. Sobre estos hechos el **Agente Roger Bermúdez Rodríguez** declaró igualmente que al entrevistar al Recurrido este le indicó que como estaban discutiendo el llevó a la señora Alicea Méndez a casa de un amigo que es como su padre; que esta subió, tocó a la puerta y que al bajar la señora Alicea Méndez se cayó por las escaleras y recibió varias laceraciones en diferentes partes del cuerpo. Declaró el testigo que esta tenía laceraciones en las rodillas, que estas estaban machucadas y que se procedió a tomar fotos de las lesiones. Indicó además, que posteriormente la fiscal Yanitza Negrón expidió boleto y radicó contra el Recurrido violación al Art. 3.1 de la Ley Núm. 54.[11] Al ser contrainterrogado el **Agente Roger Bermúdez Rodríguez** afirmó que en el procedimiento de Regla 6 se determinó no causa en contra del señor Riopedre Flores y que los

---

[10] *Véase* páginas 29-30 de la Transcripción de la Vista Administrativa celebrada el 11 de octubre de 2023 ante la CIPA.
[11] *Véase* páginas 34-36 de la Transcripción de la Vista Administrativa celebrada el 11 de octubre de 2023 ante la CIPA.

machucones de la señora Alicea Méndez eran en rodillas y brazos.[12] De igual forma la Honorable Comisionada Luisa Burgos Lebrón preguntó al **Agente Roger Bermúdez Rodríguez** si al entrevistar a la perjudicada indagó como si el Recurrido iba guiando esta recibe un puño en el lado derecho del rostro y el testigo respondió que eso lo desconocía.[13]

Finalmente, el Agente Edwin García Lugo, (Placa # 20495), de la Unidad de Servicios Técnicos de Mayagüez declaró ante la CIPA que fue quien tomó las fotos de la señora Alicea Méndez el día de los hechos. Sobre estos extremos, la Honorable Comisionada Luisa Burgos Lebrón estableció que el testigo no era perito para opinar si la persona tenía acné o una herida, y que tampoco iba a permitir mediante su testimonio interpretación de las fotografías.[14]

Mediante *Resolución* de 25 de octubre de 2023, notificada el 19 de abril del corriente año, la CIPA declaró *Ha Lugar* la *Apelación* presentada por el Recurrido; **revocó la medida disciplinaria de expulsión,** impuesta al señor Riopedre Flores por el Comisionado del Negociado de la Policía Puerto Rico en la *Resolución Final* emitida el 4 de enero de 2022 y ordenó el pago de salarios y haberes dejados de percibir durante el término que el señor Riopedre Flores estuvo expulsado, así como desde la suspensión sumaria hasta su expulsión.[15] En dicha *Resolución* de 25 de octubre de 2023 la CIPA hizo las siguientes determinaciones de hechos probados:

### DETERMINACIONES DE HECHOS

1.  El Ex. Agte. Ronald Riopedre Flores #24153 (en adelante el apelante), era empleado regular del Negociado de la Policía de Puerto Rico.
2.  El Ex. Agte. RonaldRiopedre Flores #24153, para la fecha de los alegados hechos sostenía una relación consensual con la señora Vanessa Alicea Méndez.
3.  El 7 de noviembre de 2020, alegadamente el apelante en horas de la noche agredió a la señora Vanessa Alicea Méndez. La señora Alicea Méndez fue encontrada por el Teniente Pablo R. Pluguez detrás de los predios del Negocio "El Divorcio".

---

[12] *Véase* páginas 37-38 de la Transcripción de la Vista Administrativa celebrada el 11 de octubre de 2023 ante la CIPA.
[13] *Véase* página 40 de la Transcripción de la Vista Administrativa celebrada el 11 de octubre de 2023 ante la CIPA.
[14] *Véase* páginas 42-43, 44 (Líneas14-19) y) pág. 45 (Líneas15-22 de la Transcripción de la Vista Administrativa celebrada el 11 de octubre de 2023 ante la CIPA.
[15] *Véase* páginas 63-68 del Apéndice del *Recurso de Revisión Administrativa.*

4. El Teniente Pluguez describió el estado físico de la dama diciendo que tenía las rodillas raspadas compatibles con una caída, una raspadura en el hombro izquierdo y que la señora Alicea Méndez alegó que había sido agredida en el rostro, pero que el teniente indicó que no eran visibles las marcas. El agente Roger Bermúdez Rodríguez al momento de entrevistar a la señora Alicea Méndez tampoco le observó ningún golpe en el rostro.

5. El teniente Pablo Pluguez Alvarado declaró que tanto la señora Vanessa Alicea Méndez y el Ex Agte Ronald Riopedre Flores expedían un fuerte olor a alcohol a la hora de ser entrevistados.

6. Las fotos tomadas el 7 de septiembre de 2020, por el Agente Edwin García Lugo, de Servicios Técnicos del CIC de Mayagüez; mostraban que no había hematomas o laceraciones en el rostro de la señora Vanessa Alicea Méndez.

7. La Honorable Margarita Gaudier Lavergne, del Tribunal de Mayagüez determinó no causa para arresto contra el Ex Agente Ronald Riopedre Flores por las denuncias presentadas por la violación al artículo 3.1 de la Ley de Violencia Doméstica.[16]

A base de las anteriores determinaciones de hecho la CIPA concluyó que el señor Riopedre Flores no incurrió en las faltas graves 18, 29 y 32 contempladas en el Artículo 14, Subsección 14.6.1 incisos (18), (29) y (32) del *Reglamento de Personal de la Policía de Puerto Rico,* sobre las cuales se le encontró incurso en la *Resolución Final* emitida por el Comisionado del Negociado de la Policía Puerto Rico. Concluyó la CIPA que **la señora Alicea Méndez no compareció a dar su versión de los hechos** y que la Policía de Puerto Rico no presentó la prueba clara, robusta y convincente requerida para justificar la sanción de expulsión del Recurrido del Cuerpo de la Policía de Puerto Rico. Sobre estos extremos, concluyó la agencia recurrida que los testimonios de los agentes de la Policía de Puerto Rico no convencieron a la CIPA de que el Recurrido agrediera a la señora Alicea Méndez o que hubiera ocurrido un incidente de violencia doméstica y a

---

[16] *Véase* páginas 63-64 del Apéndice del *Recurso de Revisión Administrativa.* El Art.3.1 de la Ley Núm. 54, *supra*, establece que comete maltrato:

> **Toda persona que empleare** fuerza física o violencia psicológica, intimidación o persecución en la persona de su cónyuge, ex cónyuge o la persona con quien cohabita o haya cohabitado, o la persona con **quien sostuviere o haya sostenido una relación consensual,** o la persona con quien haya procreado un hijo o hija, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, **para causarle daño físico a su persona**, a los bienes apreciados por esta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro **o para causarle grave daño emocional, incurrirá en delito grave de cuarto grado** n su mitad superior. 8 LPRA sec. 631.

juicio de los testigos las heridas recibidas por esta eran compatibles con una caída. Asimismo, a juicio de la, las fotografías tomadas a la señora Alicea Méndez evidenciaron pequeños golpes en rodillas y brazos compatibles con una caída. Finalmente, la CIPA concluyó que la conducta imputada al señor Riopedre Flores no se sostiene con la prueba documental y testifical desfilada, toda vez que **no satisface el *quantum* de prueba clara, robusta y convincente.** Razonó la CIPA que "en los casos disciplinarios en los que medie una expulsión, se priva al funcionario de ganarse la vida o se le separa permanentemente de su puesto de trabajo, afectándose su derecho al empleo, la sanción no puede ser confirmada con cualquier alegación, así como tampoco puede imponerse un castigo sin evidencia fehaciente que satisfaga el *quantum* de prueba clara, robusta y convincente que amerite la imposición de una medida tan drástica como la expulsión."[17]

En desacuerdo, el 7 de mayo de 2024 la Policía de Puerto Rico presentó *Moción en Solicitud de Reconsideración de Resolución.*[18] En esencia, la Recurrente señaló que la CIPA erró al concluir que la Policía de Puerto Rico no presentó la prueba clara, robusta y convincente requerida para justificar el castigo impuesto al apelado.

Mediante *Resolución* emitida el 15 de mayo de 2024, notificada al día siguiente, la CIPA declaró *No Ha Lugar* la *Moción en Solicitud de Reconsideración de Resolución* presentada por la Policía de Puerto Rico.[19]

Inconforme, la Policía de Puerto Rico presentó el recurso de epígrafe y señala la comisión de los siguientes errores por parte del foro primario:

> Erró la Comisión de Investigación, Procesamiento y Apelación (CIPA) al declarar "Ha Lugar" la Apelación presentada por el Ex Agte. Riopedre Flores basada en que la prueba presentada por el Negociado de la Policía no demostró la comisión de las faltas imputadas a este que justifican la medida disciplinaria impuesta por el Comisionado del Negociado de la Policía, y al no admitir como prueba documental de la parte apelada la Planilla Informativa suscrita de puño y legra y firmada por la perjudicada, señora Alicea Méndez, en presencia del Tnte. Pablo R. Pluguez Alvarado, quien también firmó el documento, y compareció como testigo.

---

[17] *Véase* Página 67 del Apéndice del *Recurso de Revisión Administrativa.*
[18] *Véase* Anejo XX a las páginas 69-70 del Apéndice del *Recurso de Revisión Administrativa.*
[19] Véase página 72 del Apéndice del *Recurso de Revisión Administrativa.*

Erró la Comisión de Investigación, Procesamiento y Apelación (CIPA), al, como parte del remedio concedido a la parte recurrida, ordenar el pago de salarios y haberes dejados de percibir comprendidos desde la Suspensión Sumaria hasta la *Resolución Final* de expulsión del Ex Agte. Feliciano Gotay, y al no disponer que el remedio del pago de salarios y haberes dejados de percibir quedaba sujeto a la norma establecida en *Hernández Badillo v. Municipio de Aguadilla*, 154 DPR 199 (2001).

El 24 de julio de 2024, el Negociado y el Recurrido presentaron *Moción Conjunta Para Presentar la Transcripción Estipulada de la Prueba Oral Desfilada en la Vista Administrativa.* Posteriormente, el 23 de agosto de 2024, la parte Recurrente presentó *Alegato Suplementario del Negociado de la Policía* en el que sostiene que los testimonios y la prueba documental desfilada establecieron la comisión de las faltas graves imputadas al Recurrido y enfatizó que el hecho de que la causa criminal contra el señor Riopedre Flores no prosperara es totalmente irrelevante e impertinente ya que la agencia está facultada para llevar a cabo un procedimiento disciplinario por los mismos hechos.

Por su parte, el señor Riopedre Flores presentó *Alegato en Oposición* el 23 de septiembre de 2024. En esencia, este alegó que la determinación de la CIPA referente a que la señora Alicea Méndez no tenía ningún golpe en el rostro indicativo de haber sido agredida por el Recurrido y que esta tenía lesiones en rodillas y brazos consistentes con una caída, así como un fuerte olor a alcohol, fue una razonable y correcta, basada en la prueba desfilada que la llevó a concluir que los testimonios de los agentes no establecieron que ocurriera un incidente de violencia doméstica y que el Negociado incumplió con el *quantum* de prueba prueba clara, robusta y convincente. Sobre el primer señalamiento de error del Negociado referente a que incidió la CIPA al no admitir como prueba documental de la parte apelada la Planilla Informativa suscrita de y firmada por la señora Alicea Méndez, el Recurrido sostiene que las declaraciones del Teniente Pablo R. Pluguez Alvarado y el Agente Roger Bermúdez Rodríguez referente a lo que alegó la señora Alicea Méndez así como el contenido la Planilla Informativa son contrarias al debido proceso de ley. Razona el Recurrido que a esta no comparecer a la Vista en su Fondo y no

estar sujeta a ser contrainterrogada, ello afectó el derecho a la confrontación, así como el grado de confiabilidad de su versión.

De igual forma el Recurrido sostiene en su *Alegato en Oposición* que toda vez que no fue suspendido sumariamente como plantea el Negociado en su segundo señalamiento de error, sino expulsado del Cuerpo de la Policía de Puerto Rico en este caso procede el pago de salarios y haberes dejados de percibir desde el 7 de febrero de 2022, fecha en que se diligenció la *Resolución Final.*

**II.**

**A.**

En nuestro ordenamiento jurídico las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. *he Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012). Esta norma de deferencia se basa en que las agencias son las que cuentan con conocimiento especializado en los asuntos que les han sido encomendados, así como con vasta experiencia en la implantación de sus leyes y reglamentos. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Camacho Torres v. Admin. para el Adiestramiento de Futuros Empresarios y Trabajadores*, 168 DPR 66 (2006). Es por ello que tales determinaciones tienen a su favor una presunción de legalidad y corrección que debe respetarse. *DACo v. AFSCME*, 185 DPR 1, 26 (2012); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744 (2012).

Las determinaciones finales de las agencias administrativas son revisadas en este Tribunal de Apelaciones mediante el recurso de revisión administrativa. El estándar de revisión de este tipo de recurso está fundamentado en el principio rector de la razonabilidad; es decir, se examina que la agencia no haya actuado de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía*, 196 DPR 606, 626 (2016). En este sentido, la revisión judicial se limita a examinar: 1) si el remedio concedido fue razonable; (2) si las

determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II*, supra, pág. 940; véase, además, Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), 3 LPRA sec. 9675.

No obstante, la deferencia judicial cede cuando la actuación administrativa es irrazonable o ilegal y ante interpretaciones administrativas que conduzcan a la comisión de injusticias. *Asoc. Fcias. V. Caribe Specialty II*, supra, pág. 941. Así, para impugnar la razonabilidad de una determinación o demostrar que la evidencia que obra en el expediente administrativo no es sustancial, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de tal evidencia. *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999). La evidencia sustancial es la prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Rolón Martínez v. Caldero López*, supra, pág. 36.

De otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno*. Rebollo v. Yiyi Motos,* 161 DPR 69, 77 (2004). Aun así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial. *Torres Santiago v. Depto. de Justicia,* 181 DPR 969, 1002 (2011).

En cuanto a la aplicación de las Reglas de Evidencia a los procedimientos administrativos, la sección 3.13 de la LPAU dispone en sus incisos (c) y (e) lo siguiente:

> (c) El funcionario que presida la vista podrá excluir aquella evidencia que sea impertinente, inmaterial, repetitiva o inadmisible por fundamentos constitucionales o legales basados en privilegios evidenciarios reconocidos por los tribunales de Puerto Rico.
>
> [...]

(e) Las Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento.

[…][20]

En todo proceso adjudicativo, el propósito fundamental es la búsqueda de la verdad y la justicia.[21] De acuerdo con nuestro Tribunal Supremo, no aplicar las Reglas de Evidencia a los procesos administrativos persigue que lo justo impere sin las trabas procesales de los tribunales de justicia y propiciar que estos sean de carácter ágil y sencillo.[22] Este carácter informal y flexible, el cual distingue a los procesos administrativos, permite que el juzgador de hechos conozca toda la información pertinente para dilucidar la controversia presentada. [23] Empero, los principios fundamentales de las reglas de evidencia podrán utilizarse en dichos procesos mientras sean compatibles con la naturaleza de los mismos y sirvan para lograr la solución rápida justa y económica de la controversia.[24]

Al evaluar un recurso de revisión judicial, los foros apelativos debemos examinar tres aspectos. El primero de estos consiste en evaluar si el remedio concedido por la agencia es el adecuado. El segundo, si las determinaciones de hechos se sostienen con evidencia sustancial que surja del propio expediente administrativo; y tercero, si son correctas las conclusiones de derecho. 3 LPRA sec. 9675. Al realizar nuestro análisis, el Tribunal Supremo ha reiterado que las agencias administrativas merecen una amplia deferencia judicial "ya que [e]stas poseen una vasta experiencia y un conocimiento especializado sobre los asuntos que por ley se les ha delegado." *JP Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177,186 (2009). Por otro lado, cuando la parte recurrente demuestre que la actuación de la agencia no fue razonable, procede revocar tal determinación. *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009).

---

[20] Sección 3.13 de la LPAU, 3 LPRA sec. 2163.
[21] *Otero v. Toyota*,163 DPR 716, 733 (2005).
[22] *Id.* (*citando a Martínez v. Tribunal Superior,* 83 DPR 717, 720 (1961)).
[23] *Id.*
[24] *Id.* (*citando a O.E.G. v. Rodríguez,* 159 DPR 98, 112 (2003)).

Es preciso destacar que, en los casos por imputaciones éticas a empleados públicos, se requiere satisfacer el criterio de prueba clara, robusta y convincente. Entiéndase, aquella evidencia que produce "en el juzgador una convicción permanente de que los asuntos fácticos son altamente probables." *Oficina de Ética Gubernamental v. Martínez Giraud*, 209 DPR 79 (2022). De tal forma, el *quantum* probatorio requerido para penalizar cualquier infracción bajo la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, 3 LPRA sec. 1854 *et seq.*, es el antes mencionado, entiéndase, prueba clara, robusta y convincente. *Id.*

**B.**

El Tribunal Supremo de Puerto Rico estableció que "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

Como regla general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los foros inferiores, sin intervenir con la apreciación y la adjudicación de credibilidad que realiza el juzgador de los hechos en relación con la prueba testifical. *Pueblo v. Hernández Doble*, 210 DPR 850, 864-865 (2022); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Sin embargo, esta regla cede si se demuestra que, el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Ortiz Ortiz v. Medtronic*, supra.

Como se sabe, es doctrina reiterada por el Tribunal Supremo de Puerto Rico que, los tribunales apelativos intervienen con la apreciación de la prueba cuando: (1) el apelante demuestra la existencia de pasión, prejuicio, parcialidad o error manifiesto; o (2) si la apreciación de la prueba

no concuerda con la realidad fáctica o esta es inherentemente imposible o increíble. *Pueblo v. Arlequín Vélez*, 204 DPR 117, 147 (2020). A esos efectos, la parte que impugne la apreciación de la prueba es la parte encargada de señalar y demostrar la base para la intervención apelativa. *Pueblo v. Cabán Torres,* 117 DPR 645 (1986). De conformidad, y en la medida en que el juzgador de los hechos está en mejor posición para aquilatar la prueba testifical, al intervenir con la apreciación del foro de instancia es indispensable que la parte que cuestione la apreciación de la prueba presente y reproduzca la transcripción de la prueba oral. *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011).

## C.

El Centro de Investigación, Procesamiento y Apelación (CIPA) es el "cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones", presentadas por funcionarios públicos autorizados para hacer arrestos, sobre la imposición de medidas disciplinarias. Artículo 2 de la Ley de la Comisión de Investigación, Procesamiento y Apelación, Ley Núm. 32 de 22 de mayo de 1972, 1 LPRA sec. 171 *et seq.* Se trata del foro administrativo con conocimiento especializado en la adjudicación de estos casos. *González y otros v. Adm. de Corrección*, 175 DPR 598, 607-608 (2009), que cita a *Arroyo v. Policía de P.R.*, 143 DPR 265 (1997). En *González y otros v. Adm. de Corrección*, *supra*, pág. 613, el Tribunal Supremo de Puerto Rico señaló "que la CIPA es el foro apelativo con jurisdicción exclusiva para atender los recursos incoados" por los funcionarios públicos cubiertos por la Ley, "incluso si los mismos pudieran incidir subsidiariamente sobre el principio del mérito u otros asuntos de personal." Añade nuestro más alto foro que "[d]icha conclusión meramente reproduce la clara intención de la Asamblea Legislativa al crear la CIPA como organismo especializado para revisar las alegadas faltas disciplinarias de todos aquellos funcionarios llamados a preservar el orden y la seguridad en las instituciones penales y en las comunidades del país." *González y otros v. Adm. de Corrección*, *supra*, págs. 613-614.

A la luz de ello, la Comisión, luego de celebrar la vista correspondiente, según lo dispuesto en el inciso (3) de la sec. 173 de la Ley, podrá *confirmar, revocar o modificar* la determinación o actuación de la cual se hubiere apelado, *o podrá imponer cualquier sanción que la autoridad facultada para sancionar hubiese podido imponer*. 1 LPRA sec.172(2). En la vista, la CIPA tiene la oportunidad de escuchar nuevamente toda la prueba presentada ante el Superintendente y otorgarle el valor probatorio que a su juicio merezca la misma. Esta vista es una especie de juicio *de novo*, por lo que la CIPA puede arribar a determinaciones de hecho o conclusiones de derecho diferentes a las emitidas por el Superintendente. *Arocho v. Policía de P.R.*, 144 DPR 765, 772 (1998).

Así, pues, la vista que se celebra ante la CIPA "es propiamente una vista formal, porque en ella se ventilan de manera definitiva, a nivel administrativo, todos los derechos del empleado, y las determinaciones de hecho de esa agencia están sujetas, únicamente, al limitado ámbito de la revisión judicial. En ese sentido, es equivalente a un juicio en sus méritos". *Ramírez v. Policía de P. R.*, 158 DPR 320, 334 (2003). Es decir, las actuaciones de la CIPA se asemejan a las de un tribunal, debido al poder de adjudicación que le fue delegado. Por tal razón, el examinador o comisionado que presida las vistas debe ajustarse a los principios básicos que rigen la discreción judicial. *Id.*, pág. 340.

**D.**

La Ley Núm. 20 de 10 de abril de 2017, *Ley del Departamento de Seguridad Pública de Puerto Rico*, 25 LPRA sec. 3501 *et seq.*, establece lo siguiente en el Artículo 2.20, *Medidas Disciplinarias*, 25 LPRA sec. 3550:

> El Comisionado determinará por reglamento las faltas administrativas de los miembros del Negociado de la Policía de Puerto Rico que conllevaren medidas correctivas no punitivas y/o acciones disciplinarias. Dichas faltas estarán clasificadas en infracciones, faltas leves o faltas graves. El Reglamento, a su vez, dispondrá el procedimiento aplicable para la investigación y adjudicación, así como las sanciones aplicables a cada tipo de falta.

De no estar conforme con alguna decisión del Comisionado imponiendo algún castigo, el miembro concernido podrá apelar el caso ante la Comisión de Investigación, Procesamiento y Apelación creada mediante la Ley Núm. 32 de 22 de mayo de 1972. La apelación deberá presentarse en o antes de treinta (30) días después de la notificación de la determinación final sobre la medida disciplinaria impuesta.

En lo pertinente, el Artículo 14.6 del *Reglamento de Personal de la Policía de Puerto Rico*, Reglamento 4216 de 11 de mayo de 1990, según enmendado por el Reglamento 9001 de 29 de agosto de 2017, (Reglamento Núm. 4216), dispone que el Superintendente de la Policía de Puerto Rico tiene autoridad en ley para imponer acciones disciplinarias necesarias cuando la conducta de un miembro de la Policía de Puerto Rico no se ajuste a las normas establecidas. Entre otras se impondrán las acciones disciplinarias, de conformidad con su definición y la sanción que se indique en las tablas creadas a esos efectos. Entre estas, el Artículo 14.6 inciso f del Reglamento Núm. 4216, *supra,* dispone que el Superintendente tendrá facultad para separar total, absoluta y permanentemente del servicio a un miembro de la Policía de Puerto Rico previa formulación de cargos por escrito y celebración de vista administrativa informal y que la expulsión se hace efectiva al momento de ser notificada la resolución final.

Sobre esos extremos, el Artículo 14.6.1 incisos (18), (29) y (32) del *Reglamento de Personal de la Policía de Puerto Rico*, Reglamento 4216 de 11 de mayo de 1990, según enmendado por el Reglamento 9001 de 29 de agosto de 2017, establece como faltas graves entre otras, las siguientes y dispone la sanción correspondiente para cada falta grave, que va a depender en algunos casos de si se trata de una primera o una segunda infracción a la falta grave imputada.

**(18). Desacatar y desobedecer órdenes legales comunicadas en forma verbal o escrita por cualquier superior o funcionario de la Policía de Puerto Rico con autoridad para ello, o realizar acto de insubordinación o indisciplina. Para efectos de esta falta se entenderá como superior aquel de mayor rango o por la posición designada**.

(Primera Sanción-suspensión de empleo y sueldo por 40 días

Segunda Sanción-suspensión de empleo y sueldo por 70 días.)

.......

**(29) Incurrir en una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía.**

(Primera Sanción-suspensión de empleo y sueldo por 40 días

Segunda Sanción-suspensión de empleo y sueldo por 70 días.)

…………..

**32. Incurrir en actos constitutivos de la Ley Núm. 54 de 15 de agosto 1989, según enmendada, "Ley de Violencia Doméstica". La investigación administrativa no dependerá de los resultados del caso criminal.**

(Primera Sanción-Expulsión)

**E.**

En *Amy v. Adm. Deporte Hípico,* 116 DPR 414, 421 (1985), el Tribunal Supremo resolvió que el derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente, es un principio inalienable al hombre, preexistente a la más antigua de las constituciones conocidas. En ese contexto, en *In re Caratini Alvarado*, 153 DPR 575, 584 (2001), el Tribunal Supremo adoptó el *quantum* de prueba clara, robusta y convincente como el necesario para imponer sanciones disciplinarias a un abogado por violación al Código de Ética Profesional. En ese caso, el Tribunal Supremo fue enfático en señalar lo siguiente:

> En casos disciplinarios contra miembros del foro **está envuelto *el derecho de éstos a ganarse el sustento como abogados.*** A esos efectos, debe mantenerse presente que este Tribunal —en *Amy v. Adm. Deporte Hípico,* 116 DPR 414, 421 (1985)— resolvió que el "derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente, *es un principio inalienable al hombre, preexistente a la más antigua de las constituciones conocidas"*.
>
> Siendo ello así —*y no existiendo controversia sobre el hecho de que en un proceso disciplinario está en juego el título de un abogado, esto es, **el derecho a ganarse la vida como tal**—* somos de la opinión que el criterio a utilizarse en esta clase de situaciones debe ser el mismo que utilizamos en *P.P.D. v. Admor. Gen. de Elecciones*, 111 DPR 199 (1981); esto es, *el de "prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas".* (Énfasis suplido). *Id.*, a las págs. 584-585. (Citas omitidas).

La prueba "clara, robusta y convincente" es el estándar de suficiencia de la prueba intermedio. Es decir, se trata de un estándar más riguroso que el típico estándar de preponderancia de la prueba en casos civiles, pero que, a su vez, es menos riguroso que el estándar de prueba más allá de duda razonable que se utiliza en los casos penales. Según el

Profesor Ernesto Chiesa, "[e]ste estándar se usa cuando está por el medio un derecho demasiado fundamental para permitir ser afectado por la sola preponderancia de la evidencia". Ernesto L. Chiesa Aponte, *Reglas de Evidencia Comentadas,* Ediciones SITUM, 2016, p. 51-52.

Para la negación de un derecho fundamental, el debido proceso de ley exige que el valor y suficiencia de la prueba sea medido con el criterio de prueba clara, robusta y convincente". *Colón Pérez v. Televicentro de P.R.,* 175 DPR 690, n.30 (2009).

En *OEG v. Martínez Giraud*, 59 DPR 98 (2003) el Tribunal Supremo expresó que, en el ámbito administrativo, el *quantum* de prueba necesario para prevalecer es el de preponderancia de la prueba. Allí, también, nuestro más Alto Foro aclaró que, en un procedimiento administrativo en el cual está en riesgo un derecho fundamental, como lo sería la privación de un empleo, el estándar aplicable es el de prueba clara, robusta y convincente. *Íd*. Este *quantum* de prueba intermedio ha sido definido como "aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables." *Íd.*, pág. 94.

**F.**

Sobre el remedio, en *Hernández Badillo v. Municipio de Aguadilla*, 154 DPR 199 (2001), la entonces Junta de Apelaciones del Sistema de Administración de Personal (JASAP) revocó las cesantías de unos empleados públicos decretadas por el Municipio de Aguadilla, al determinar que fueron improcedentes, y ordenó la reinstalación de los empleados cesanteados a sus cargos. JASAP también dispuso que se pagaran a esos empleados los haberes dejados de percibir durante el tiempo en que estuvieron fuera de su empleo, pero estableció que se descontaría de esos haberes cualquier compensación recibida por los cesanteados por servicios prestados por ellos en el sector público mientras estuvieron cesanteados. El anterior Tribunal de Circuito de Apelaciones modificó la orden de JASAP y dispuso que, de los haberes referidos también debía descontarse cualquier salario devengado de la empresa privada. El

Tribunal Supremo **confirmó el dictamen, basado** en la interpretación que hizo de la Sección 7.17 de la Ley de Personal del Servicio Público, 3 LPRA sec. 1397. Así, autorizó al municipio a deducir de la cuantía concedida por concepto de salarios dejados de percibir, aquellos ingresos recibidos por trabajos obtenidos y realizados durante el período que duró la cesantía, independientemente de si esos ingresos provenían de fuentes gubernamentales o privadas.

En esencia, esta doctrina que establece que se deberá pagar los salarios y haberes dejados de percibir, luego de deducir de esa cuantía cualquier ingreso que haya devengado el empleado de alguna entidad pública o privada durante el tiempo en que estuvo fuera de servicio, fue reiterada en *Whittenburg v. Col. Ntra. Sra. Del Carmen,* 182 DPR 937 (2011).

**III.**

Es la contención del Negociado en su primer señalamiento de error que incidió la CIPA al concluir que la prueba presentada por dicha parte no demostró la comisión de las faltas imputadas al Recurrido que justifican la medida disciplinaria de expulsión, impuesta por el Comisionado del Negociado de la Policía, y al no admitir como prueba documental de la parte apelada la Planilla Informativa suscrita a puño y letra y firmada por la señora Alicea Méndez. Argumenta la parte recurrente que dicha Planilla Informativa fue firmada por la señora Alicea Méndez en presencia del Tnte. Pablo R. Pluguez Alvarado, quien también firmó el documento, y compareció como testigo, por lo que debió ser admitida.

La Planilla Informativa suscrita a puño y letra el 7 de septiembre de 2020 y firmada por la señora Alicea Méndez se identificó por la CIPA como **prueba ofrecida y no admitida**, (Identificación #1). Esto obedeció a que la señora Alicea Méndez, no compareció a la Vista en su Fondo a pesar de haber sido debidamente citada y autorizada a que su testimonio fuese mediante videoconferencia, por lo que la CIPA no estaba en posición de adjudicar credibilidad a base de la dicha prueba documental, sin que la

suscribiente compareciera a declarar sobre su contenido y estuviese sujeta a ser contrainterrogada. Como reconoce la LPAU, si bien las Reglas de Evidencia no son aplicables a las vistas administrativas, los principios fundamentales de evidencia pueden utilizarse para lograr una solución rápida, justa y económica del procedimiento. En el balance de estos principios, no encontramos que la agencia recurrida incurriera en abuso de discreción al no admitir como prueba dicha Planilla Informativa, cuando la suscribiente, la señora Alicea Méndez no compareció a la Vista en su Fondo.

En el presente caso, la agencia tuvo oportunidad de escuchar testimonio sobre los hechos que originaron la querella en contra del Recurrido y la posterior formulación de cargos, así como otra evidencia que consistió básicamente de fotografías sobre las lesiones físicas sufridas por la señora Alicea Méndez, lesiones que a juicio de los testigos que la observaron el día de los hechos, así como de la CIPA eran compatibles con una caída.

El *quantum* probatorio requerido para penalizar cualquier infracción *Reglamento de Personal* que constituya Falta Grave cuya sanción primera es la expulsión es forzosamente el de prueba clara, robusta y convincente toda vez que el procedimiento disciplinario que culmina con la expulsión del Cuerpo de la Policía de Puerto Rico atenta contra el derecho al trabajo del Recurrido.

La sanción de expulsión en las infracciones imputadas al Recurrido está contemplada en el Artículo 14.6.1 **inciso (32)** del *Reglamento de Personal de la Policía de Puerto Rico*, Reglamento Núm. 4216, cuando el empleado ha ocurrido **en actos constitutivos de la Ley Núm. 54 de 15 de agosto 1989, según enmendada, "Ley de Violencia Doméstica".** Si bien el ser exonerado de violación al Art.3.1 de la Ley Núm. 54, *supra*, en el ámbito penal no se traduce en una exoneración automática de las Faltas Graves imputadas en el ámbito disciplinario administrativo, es preciso destacar que en el caso que nos ocupa **el referido al procedimiento**

**criminal en contra del señor Riopedre Flores culminó con una determinación de no causa en Regla 6.** Sobre estos extremos puntualizamos que el *quantum* de prueba bajo Regla 6 es el de *Scintilla* de evidencia y no el de más allá de duda razonable por lo que en este contexto particular es también significativa la exoneración del Recurrido en esta etapa de nuestro ordenamiento procesal penal, ya que el *quantum* de prueba bajo Regla 6 definitivamente es menos riguroso que una etapa posterior en la que tendrá que probarse su culpabilidad más allá de duda razonable.[25]

Ahora bien, de otra parte, en un proceso disciplinario, como el que nos ocupa, que culminó con la expulsión del Recurrido de su puesto en la Policía de Puerto Rico, está en juego **el derecho a ganarse la vida como tal** por lo que el criterio a utilizarse en esta clase de situaciones debe ser el *quantum* de prueba clara, robusta y convincente, el cual es un quantum más riguroso que el de preponderancia de prueba. *Véase In re Caratini Alvarado*.

Analizados los argumentos de las partes, conforme a la normativa anteriormente expuesta, concluimos que no incidió la agencia recurrida al concluir que la prueba desfilada por el Negociado no cumplió el *quantum* requerido de prueba clara, robusta y convincente necesario para que prospere una sanción disciplinaria que culminó con la expulsión del Recurrido. Tampoco incidió la CIPA al negarse a admitir la Planilla Informativa suscrita por la señora Alicea Méndez ante el Teniente Pablo R. Pluguez Alvarado, quien optó por no asistir a la Vista en su Fondo a pesar de haber sido autorizada a prestar testimonio mediante el sistema de videoconferencia, por lo que no colocó a la CIPA en posición de adjudicar credibilidad sobre su versión de los hechos.

---

[25] El magistrado puede determinar causa para el arresto a base de la denuncia, de las declaraciones juradas que se unen a ella o a base del examen por juramento de un testigo con conocimiento personal de los hechos. Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II, R. 6. La determinación también se puede fundamentar en declaraciones hechas por información o creencia, siempre que tengan suficientes garantías de confiabilidad. Lo imperativo es que la información provista sea suficiente para que el magistrado encuentre causa probable para creer que se ha cometido un delito y que el imputado lo cometió. *Pueblo v. Rivera Martell*, 173 DPR 601, 610 (2008); *Pueblo v. Jiménez Cruz*, 145 DPR 803, 813 (1998).

Como segundo señalamiento de error el Negociado sostiene que incidió la CIPA al conceder como parte del remedio al Recurrido el pago de salarios y haberes dejados de percibir comprendidos desde la Suspensión Sumaria hasta la *Resolución Final* de su expulsión y al no disponer que el remedio del pago de salarios y haberes dejados de percibir quedaba sujeto a la norma establecida en *Hernández Badillo v. Municipio de Aguadilla*, 154 DPR 199 (2001).

Sobre el remedio concedido al Recurrido, la doctrina establece que se deberá pagar los salarios y haberes dejados de percibir, luego de deducir de esa cuantía cualquier ingreso que haya devengado el empleado de alguna entidad pública o privada durante el tiempo en que estuvo cesanteado o fuera de servicio. Véase, *Whittenburg v. Col. Ntra. Sra. Del Carmen, supra; Hernández Badillo v. Municipio de Aguadilla*,

Sin embargo, como cuestión de umbral, es preciso destacar que **en el caso que nos ocupa no hubo como tal una suspensión sumaria en ninguna etapa del procedimiento sino la expulsión del Recurrido del Cuerpo de la Policía de Puerto Rico desde la *Resolución Final* emitida por el Comisionado del Negociado de la Policía de Puerto Rico, notificada al señor Riopedre Flores el 7 de febrero de 2022, lo cual no está en controversia**. El propósito del pago de los haberes dejados de percibir es tratar de resarcir al empleado con los beneficios que dejó de percibir por la actuación injustificada de su patrono. Es decir, que se pretende restituir al empleado afectado a la misma posición que ocuparía de no haberse incurrido en la conducta ilegal. *Hernández Badillo v. Municipio de Aguadilla*, *supra.*

Con esos fines, puntualizamos, además, que **tampoco surge del expediente que la parte recurrente hubiese presentado ante la CIPA prueba sobre salarios, si alguno, que hubiesen sido devengados por el Recurrido durante el período que duró su expulsión. Concluimos que el remedio concedido por la CIPA está enmarcado dentro de sus parámetros discrecionales**.

Finalmente, en el ejercicio de nuestra función revisora de la Resolución recurrida emitida por la CIPA somos de la opinión que el remedio concedido por la agencia recurrida es el adecuado; que las determinaciones de hechos se sostienen en evidencia sustancial que surge del expediente administrativo y que las conclusiones de derecho son correctas.

Con estos antecedentes, conforme a la normativa anteriormente expuesta, concluimos que no incidió la CIPA al revocar la *Resolución Final* emitida el 4 de enero de 2022, por el Comisionado del Negociado de la Policía de Puerto Rico, notificada el 7 de febrero de ese año, que impuso al Recurrido la medida disciplinaria de expulsión del Cuerpo de la Policía de Puerto Rico y ordenó el pago de salarios y haberes dejados de percibir durante el término que el señor Riopedre Flores estuvo expulsado, inclusive desde que este fue separado de su puesto el 7 de febrero de 2022, cuando se le entregó personalmente la *Resolución Final*.

**IV.**

Por los fundamentos anteriormente expuestos, los cuales hacemos formar parte de esta Sentencia, confirmamos la *Resolución* recurrida emitida por la CIPA.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones